# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

August 26, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**GWENDOLYN RAMSEY,**
**Claimant Below, Petitioner**

**vs.)    No. 15-0838**  (BOR Appeal No. 2050201)
(Claim No. 2012024476)

**LOVED ONES IN-HOME CARE, LLC,**
**& ALLIED NURSING & COMMUNITY SERVICES, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gwendolyn Ramsey, by Patrick Maroney, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Loved Ones In-Home Care, LLC, & Allied Nursing & Community Services, LLC, by Katherine Arritt and Jeffrey Brannon, its attorneys, filed a timely response.

This appeal arises from the Board of Review's Final Order dated July 30, 2015, in which the Board affirmed a January 23, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's June 27, 2014, decision denying a request for authorization of a cervical spine MRI, an NCS/EMG of the left upper extremity, left shoulder surgery, a left shoulder subacromial injection, and the use of the medication Tramadol. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Ramsey injured herself in the course of her employment as an in-home healthcare aide on October 24, 2011, when she was transporting a non-mobile patient. Her claim for workers' compensation benefits was held compensable for a left shoulder sprain. Following the compensable injury, Ms. Ramsey sought treatment with Marietta Babayev, M.D., who noted that

1

Ms. Ramsey complained of neck and left shoulder pain. She diagnosed Ms. Ramsey with adhesive capsulitis of the left shoulder, cervical neuritis, a neck sprain, a left shoulder sprain, a partial thickness tear of the infraspinatus tendon, and left bicipital tendonitis.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on March 6, 2013, and authored a report memorializing his findings on March 7, 2013. He diagnosed Ms. Ramsey with a left shoulder sprain. Additionally, he noted that a left shoulder MRI performed in 2012 revealed pre-existing degenerative joint disease. He further noted that the MRI revealed an incomplete full-thickness tear of the supraspinatus tendon and a partial-thickness tear of the infraspinatus tendon, which he opined could be pre-existing and degenerative in nature. Dr. Mukkamala then opined that Ms. Ramsey has reached maximum medical improvement with respect to the compensable injury and is not in need of any further treatment.

By report dated April 2, 2014, Kenneth Fortgang, M.D., performed an age of injury analysis utilizing the results of a left shoulder MRI performed approximately four months after the compensable injury. Dr. Fortgang noted that the MRI revealed degenerative changes throughout the shoulder with an incomplete full thickness tear of the supraspinatus tendon and a partial thickness tear of the infraspinatus tendon. He opined that there is no evidence indicating that the MRI findings represent a one-time trauma, but rather most likely arise from degeneration associated with normal use of the joint.

Marsha Lee Bailey, M.D., issued an addendum report on May 29, 2014, following her May 5, 2014, records review.[1] She opined that Ms. Ramsey's left shoulder pain currently arises from internal derangement of the left shoulder, including degenerative joint disease and osteoarthrosis, which pre-existed the compensable injury. Additionally, she opined that the compensable left shoulder sprain resolved long ago. Finally, Dr. Bailey indicated that she agrees with Dr. Mukkamala's assessment that the supraspinatus and infraspinatus tendon tears could be degenerative and pre-existing in nature.

On June 27, 2014, the claims administrator denied Dr. Babayev's request for authorization of a cervical spine MRI, an NCS/EMG of the left upper extremity, surgical repair of the torn tendons in the left shoulder, a left shoulder subacromial injection, and the use of the medication Tramadol based upon a finding that the requested treatment is not medically reasonable for the treatment of the compensable left shoulder strain.[2] In its Order affirming the

---

[1] Dr. Bailey's report memorializing her May 5, 2014, records review was not provided to this Court for review.

[2] Dr. Babayev made numerous requests for authorization of the treatments currently at issue. Although the record is incomplete with respect to these prior requests, it is clear that on February 27, 2012, the claims administrator denied a request for authorization of a cervical spine MRI. Additionally, in a decision dated August 19, 2014, the Office of Judges noted that there is no indication that a cervical spine MRI is necessary, as a cervical spine MRI performed in 2000 revealed the presence of extensive degenerative changes which were symptomatic at the time. Additionally, the Office of Judges noted in the same decision that the requested left shoulder surgery is aimed solely at treating degenerative changes.

June 27, 2014, claims administrator's decision, the Office of Judges held that Ms. Ramsey's current need for treatment arises solely from degenerative conditions, which are unrelated to the October 24, 2011, injury. The Board of Review affirmed the reasoning and conclusions of the Office of Judges in its decision dated July 30, 2015. On appeal, Ms. Ramsey asserts that the evidence of record demonstrates that the requested medical treatment is necessary for the ongoing treatment of the October 24, 2011, injury.

The Office of Judges found that there is no evidence indicating that Ms. Ramsey injured her cervical spine as a result of the October 24, 2011, incident, and noted that the record indicates that she began experiencing symptoms associated with degenerative changes in the cervical spine as early as 2008. Additionally, the Office of Judges found that the record reveals that Ms. Ramsey began experiencing degenerative changes in both shoulders prior to the October 24, 2011, injury. The Office of Judges then concluded that the evidence of record demonstrates that the need for the requested medical treatments likely arises from pre-existing degenerative changes in the cervical spine and left shoulder.

We agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The record clearly demonstrates that Ms. Ramsey has extensive degenerative changes in both the cervical spine and left shoulder. Additionally, treatment for the cervical spine cannot be authorized because the cervical spine is not a compensable body part in the instant claim. Further, the claims administrator previously denied a prior request for authorization of a cervical spine MRI. Finally, as was previously noted, in a prior decision the Office of Judges found that the current treatment for the left shoulder is aimed at treating degenerative changes rather than the compensable injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 26, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II